MICHIGAN TOWNSHIP PARTICIPATING PLAN v PAVOLICH

Docket No. 205214. Submitted October 7, 1998, at Marquette. Decided October 30, 1998, at 9:00 A.M.

    Michigan Township Participating Plan brought an action in the Houghton Circuit Court against Mark A. Pavolich, seeking a declaration that the defendant, a police officer for the Village of Lake Linden, was not covered under the underinsured motorist provisions of an insurance policy issued by the plaintiff to the Village of Lake Linden covering bodily injury caused to an insured by an underinsured motorist because the policy defined "insured" to include the village and its "family members," but not its employees. The court, Garfield W. Hood, J., denied summary disposition for the plaintiff and granted summary disposition for the defendant, ruling that to construe the policy as the plaintiff suggested would render the policy meaningless because the village itself could never sustain bodily injury and the village does not have family members, much less ones who can sustain bodily injury. The plaintiff appealed.

    The Court of Appeals *held*:

    Unambiguous contracts of insurance must be enforced as written, even if certain provisions are rendered meaningless by a plain reading of the language. In this case, the policy unambiguously provided that "insured" meant "[y]ou or any 'family member'" and that "you" meant the organization shown as the named insured in the declarations. Accordingly, the policy cannot be construed to include the defendant as an insured.

    Reversed and remanded for entry of summary disposition for the plaintiff.

INSURANCE — POLICY LANGUAGE — JUDICIAL CONSTRUCTION.

    Unambiguous contracts of insurance must be enforced as written, even if certain provisions are rendered meaningless by a plain reading of the language.

*Bahorski, Bieglecki, Dombrowski & Baratta, P.C.* (by *Timothy A. Bahorski*), for the plaintiff.

*Wisti & Wisti, P.C.* (by *Daniel J. Wisti*), for the defendant.

Before: SAAD, P.J., and HOOD and GRIBBS, JJ.

PER CURIAM. The trial court granted summary disposition to defendant pursuant to MCR 2.116(I)(2) in this declaratory judgment action. Plaintiff appeals as of right, arguing that the trial court incorrectly determined that defendant was insured under the policy at issue. We reverse and remand.

The parties agree to the underlying facts of this case:

> On June 11, 1994, [defendant] was employed as a police officer with the Village of Lake Linden. While on duty, [defendant] stopped to question Ronald Jutila whom he suspected of operating a motor vehicle while under the influence of intoxicating liquors. During the course of his investigation, [defendant] reached into Mr. Jutila's vehicle. As he did, Ronald Jutila attempted to drive away. [Defendant] became caught on the vehicle, was carried for some distance, and was allegedly injured. It is undisputed that [defendant] was not in, upon, getting in, on, out or off of any vehicle owned by the Village of Lake Linden at the time of his injury.
>
> [Defendant] sued Mr. Jutila. Mr. Jutila's motor vehicle insurance company settled this suit by paying the $25,000 policy limits under his policy. Because of the amount paid, [defendant] made a claim for underinsurance benefits under his employer's contract with [plaintiff]. [Plaintiff] denied the claim because [defendant] was not an insured due to the fact that he was not occupying a covered auto at the time of his alleged injuries.

[Plaintiff] filed this declaratory judgment action and moved for summary disposition under MCR 2.116(C)(10) on the issue of whether [defendant] was an insured under the Village's contract with [plaintiff] for purposes of the underinsured motorist coverage. . . .

* * *

The trial court . . . issued an Order Following Consideration of Motion for Summary Disposition which not only denied [plaintiff's] motion for summary disposition but, pursuant to MCR 2.116(I)(2), granted summary judgment in appellee's favor. Judge Hood[1] concluded that "construing the policy as Plaintiff suggested would render certain portions of the policy meaningless and such a construction would be contrary to the principles of contract interpretation which mandate that meaning must be given to all terms in an insurance policy."

On appeal, this Court reviews a grant of summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support for the plaintiff's claim. *Id.* Such a motion must be supported by affidavits, depositions, admissions, or other documentary evidence, and the "adverse party may not rest upon mere allegations or denials of a pleading, but must, by affidavits or other appropriate means, set forth specific facts to show that there is a genuine issue for trial." *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994).

Plaintiff insured the Village of Lake Linden with an insurance policy that contained provisions relating to underinsured motorist coverage. The key issue to be

---

[1] Houghton Circuit Court Judge Garfield W. Hood.

resolved is whether defendant was insured for under-insured motorist coverage under the policy language. No reported decision of this Court has addressed this issue, specifically whether a policy issued to an entity should be construed to provide coverage to individual employees of the entity on the basis that only employees, and not the entity itself, could suffer personal injuries so as to recover under the policy as written. In other words, if the insured entity could never recover under one portion of the provision as plainly written, should an ambiguity be found in the contract and a different interpretation be given to that portion so that it is not rendered meaningless.

The policy language at issue is as follows:

INSURING AGREEMENT

1. We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of bodily injury":

   a. Sustained by an "insured"; and

   b. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle."

We will pay under this coverage only after the limit of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

2. "Insured" as used in this endorsement means:

   a. You or any "family member."

   b. Any other person occupying "your covered auto."

   c. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in a. or b. above.

Part of the policy defines the relevant terms as follows:

> "*You*" and "*your*" mean the person or organization shown as the named insured in ITEM ONE of the declarations.

The named insured of the policy at issue, as listed in ITEM ONE of the declarations, is the Village of Lake Linden. Its employees are not listed as named insureds.

Michigan case law is replete with guidelines for determining when ambiguities are present in insurance contracts and for determining what to do when an ambiguity is found. A contract is ambiguous when its words can reasonably be understood in different ways. *Raska v Farm Bureau Mut Ins Co of Michigan*, 412 Mich 355, 361-362; 314 NW2d 440 (1982). If a fair reading leads one to understand there is coverage under particular circumstances and another fair reading leads one to understand there is no coverage under the same circumstances, the contract is ambiguous and should be construed against the drafter and in favor of coverage. *Id.* at 362. However, if a contract, even an inartfully worded or clumsily arranged contract, fairly admits of but one interpretation, it may not be said to be ambiguous or fatally unclear. *Id.* In other words, "[w]here the language of a policy is clear and unambiguous we cannot interpret it in such a way as to create an ambiguity where none exists." *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 448; 550 NW2d 475 (1996) (citations omitted). "[T]erms in an insurance policy must be given their plain meaning and the court cannot 'create an ambiguity . . . .'" *Heniser v Franken-*

*muth Mut Ins Co,* 449 Mich 155, 161; 534 NW2d 502 (1995). In fact, where a policy is clear, we are bound by the specific language set forth in the agreement. *Id.* at 160. Stated more succinctly:

> When determining what the parties' agreement is, the trial court should read the contract as a whole and give meaning to all the terms contained within the policy. The trial court shall give the language contained within the policy its ordinary and plain meaning so that technical and strained constructions are avoided. A policy is ambiguous when, after reading the entire document, its language can be reasonably understood in different ways. If the trial court determines that the policy is ambiguous, the policy will be construed against the insurer and in favor of coverage. However, *if the contract is unambiguous, the trial court must enforce it as written.* [*Royce v Citizens Ins Co,* 219 Mich App 537, 542-543; 557 NW2d 144 (1996) (citations omitted; emphasis added).]

In this case, the parties argue over whether the terms "[y]ou or any 'family member'" cover defendant such that he is entitled to underinsured coverage under the policy. If defendant qualifies as the "YOU" in the provision, he may collect underinsured benefits even if he was not occupying a covered automobile at the time of the injury. A plain reading of the policy precludes coverage for defendant. Reading the policy as a whole, and giving ordinary and plain meanings to its terms, the language cannot be reasonably understood to mean village employees and their families. Clearly, the term "you" in the provision refers only to the village. No mention is made of employees. Therefore, under the policy language, plaintiff is only obligated to pay damages to the village or any of its "fam-

ily members" that are entitled to "underinsured motor vehicle" coverage because of bodily injury. Our inquiry cannot end with this conclusion, however.

Defendant points out, and the trial court agreed, that a plain interpretation of the language renders the portion of the policy at issue meaningless. Specifically, if a plain interpretation is used, no one is entitled to receive underinsured coverage under the provision because the village cannot sustain bodily injury and cannot have family members who can sustain bodily injury. Because of this, defendant argues that the policy is ambiguous and should be construed to include employees of the village and their families. While we agree that the plain, unconstrained reading renders a portion of the policy meaningless, we disagree that there is an ambiguity. Therefore, we will not construe the language or reform the contract to include, as insureds, village employees and members of their families.

There is authority to support our holding that the contract language is not ambiguous as written and should not be reformed so as to include defendant as an insured. Numerous other jurisdictions have addressed this issue. The majority of those jurisdictions have ruled that a policy like the one at issue is not ambiguous and should be construed as written, even if certain provisions are rendered meaningless by a plain reading of the language. The arguments made in those cases and the language in the policies are substantially similar to those in this case. Several examples are discussed below.

In *Dixon v Gunter*, 636 SW2d 437 (Tenn App, 1982), the deceased was the sole stockholder of a corporation, which carried uninsured motorist coverage. The issue was whether the corporation's policy covered the deceased when he was operating a noncorporate vehicle and was not conducting corporate business. The appellant argued that because the policy covered "your [sic] or any family member," there must be coverage. She argued that the corporation could not receive personal injuries and could not have any "family member" and therefore, the court needed to look beyond the corporate structure and define "you" to mean the sole-shareholder of the corporation. The court declined to do so, noting that there was no latent ambiguity in the policy and that it was obvious to "even a casual reader" that the insured was a corporation, which could not suffer personal injuries or have a family. The court regarded the references to personal injuries and family as surplusage, and stated:

> A contract of insurance should be given a fair and reasonable construction; and likewise should be given a sensible construction, consonant with the apparent object and plain intention of the parties; a construction such as would be given the contract by an ordinary intelligent business man; and a practical and reasonable rather than a literal construction. The contract should not be given a forced, unnatural or unreasonable construction which would extend or restrict the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion or render the policy nonsensical and ineffective. [*Id.* at 441, citing 44 CJS, Insurance, § 296, pp 1163-1165.]

In *General Ins Co of America v Icelandic Builders, Inc*, 24 Wash App 656; 604 P2d 966 (1979), the plaintiff instituted a declaratory judgment action for a determination whether one of the directors of a closely held family corporation was covered under an uninsured motorist provision. The provision was contained in a policy issued to the defendant corporation. The director was injured in his personal automobile. The defendant argued that the language of the policy was ambiguous because its terms were uncertain and capable of being understood in more than one way. It argued that if the corporation was considered to be the only named insured, there was no "person" who would be entitled to uninsured coverage because a corporation "cannot sustain bodily injury so as to qualify for coverage." *Id.* at 659. Further, it argued that "this section of the policy is ambiguous because it purports to insure specific persons yet excludes any person if the named insured is a corporation." *Id.* The court disagreed with the defendant. The definitions provided by the policy made clear that the insured person was the corporation. The wording was not capable of being understood in more than one way. The court ruled that "[t]he identification of a corporation as the named insured does not so obfuscate the meaning of the term "person" as to create an ambiguity." *Id.*

> The named insured is the corporation and there is no other designated insured. The policy language describes unambiguously who is insured under the policy. There is no basis for applying rules of construction which [the defendant's director] seeks to invoke. The courts cannot create an

> ambiguity when none exists and thereby rewrite a policy.
> [*Id.* at 660 (citation omitted).]

In *Meyer v American Economy Ins Co*, 103 Or App 160; 796 P2d 1223 (1990), the court also rejected that individual coverage should be read into the contract simply because a failure to do so would render the provision at issue meaningless. The policy insured "You or any family member." *Id.* at 162. The policy defined the term "you" to mean "the person or organization shown as the named insured in . . . the declaration." *Id.* The named insured was the corporation. The plaintiff argued that the coverage was a nullity if literally read because the corporation could not suffer bodily injury and could not have "family members" as the term was defined. The court found that no ambiguity existed under which the plaintiff could be regarded as a named insured.

> Even if . . . there is no category one coverage if the policy is read to mean what it unambiguously says, that does not create an ambiguity. If . . . defendant has collected premiums for coverage that does not exist, that might provide the corporation with some form of remedy against defendant; it does not mean that plaintiff is covered [however]. [*Id.* at 163.]

Because there was no ambiguity, the court read the policy as written and declined to utilize rules of construction, including the rule that "every provision in the policy must be deemed to mean something," to reform the contract. *Id.*

In *Grain Dealers Mut Ins Co v McKee*, 943 SW2d 455 (Texas, 1997), the Texas Supreme Court reversed

the decision of the appellate court, which had affirmed the trial court's decision to provide coverage to an individual. The policy provided uninsured (UM) and underinsured (UIM) motorist coverage to "You and any designated person and any family member of either." *Id.* at 457. The words "you" and "your" referred to the named insured, which was a sole-shareholder corporation. The defendant argued that the policy was ambiguous. The court disagreed. "There is no reasonable interpretation of the policy that can construe [the defendant] as the 'you' to whom the covered family members are linked in the endorsements. [The defendant], unambiguously, is not the named insured." *Id.* at 458. The court held that because the corporation was the insured, not the defendant, the injured party was not a family member within the definition of the language. *Id.*

> Although interpreting an insurance policy to give a reasonable meaning to all provisions is preferable to interpreting the policy in a way that creates surplusage or leaves a portion of the policy useless or inexplicable, . . . *surplusage alone does not make an insurance policy ambiguous.* Unlike a unique contract tailor-made to the interests peculiar to each party, the UM/UIM and [personal injury protection] endorsements are standard forms crafted to accommodate a wide variety of insurance needs. [*Id.* (emphasis added).]

The court noted that the majority of jurisdictions that have considered this issue have found that the language does not create an ambiguity. *Id.* at 459. It listed numerous other cases to support the majority view. *Id.*

In most of the minority view cases, the corporations were small, closely knit, family corporations and the courts identified the corporation with the individuals for purposes of the policy. *Hager v American West Ins Co*, 732 F Supp 1072 (D Mont, 1989); *Hawkeye-Security Ins Co v Lambrecht & Sons, Inc*, 852 P2d 1317 (Colo App, 1993); *Ceci v Nat'l Indemnity Co*, 225 Conn 165; 622 A2d 545 (1993). But see *King v Nationwide Ins Co*, 35 Ohio St 3d 208; 519 NE2d 1380 (1988).

In the case at hand, the village is not a closely knit corporation or family business. It is not identified with its employees, but is a separate legal entity. Moreover, we believe that the majority approach is more appropriate and adopt it as our own. We cannot accept the proposition that an ambiguity arises whenever a plain reading of policy language renders a portion of the policy meaningless. In other words, we agree with the *McKee* court that a finding of surplusage does not equate to a finding of ambiguity. A contract is only ambiguous when its words may reasonably be understood in different ways. *Raska, supra* at 362.

In this case, there is only one interpretation that can be made when looking at the language as written. Any casual reader, giving ordinary and plain meanings to the language as written, would realize that the insured "YOU" does not refer to individual employees, but refers only to the village itself. Where the policy language describes unambiguously who is insured under the policy, there is no basis for finding an ambiguity. See *Icelandic Builders, supra*. Because

the policy is clear as written, we are bound by the specific language, *Heniser, supra* at 160, and will not construe the policy to cover defendant simply to avoid a finding that there is surplus language in the contract.

In this case we find that the provision as written does include surplusage. The policy is sloppily and inartfully drafted. It appears to be a standard policy, which was not tailored to the needs of the village. The language providing coverage to the village and its family members is clearly surplusage because the village cannot sustain bodily injury or have family members. However, as we have previously concluded, our ruling that this language is surplus does not require us to reform the contract. We also note that if the insurer collected premiums for coverage that does not exist, the village may have a remedy against defendant, but this "does not mean that plaintiff is covered". See *Meyer, supra* at 163.

On appeal, plaintiff also argues that defendant was not covered under the second portion of the underinsured motorist provision. That language provides underinsured motorist coverage to "[a]ny other person occupying 'your covered auto.'" Defendant does not contest this on appeal, nor did he contest this argument below. Therefore, resolution of this issue is unnecessary.

Reversed and remanded for entry of summary disposition in favor of plaintiff.